IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VCP HOME HEALTH CARE AGENCY, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:10-CV-1152-N |
| KATHLEEN SEBELIUS, in her capacity as SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, | § § § § § | |
| Defendant. | § § | |

# **ORDER**

This Order addresses Defendant Secretary of Health and Human Services Kathleen Sebelius's (the "Secretary") motion to dismiss [8].[1] Because Plaintiff VCP Home Health Care Agency, Inc., ("VCP") fails to show that the Secretary has unreasonably delayed a determination of VCP's responsibility for Medicare overpayments, the Court grants the motion and dismisses VCP's claims, without prejudice to VCP's refiling at a later date should it choose to do so.

---

[1]The Centers for Medicare and Medicaid Services ("CMS") selected Health Integrity, LLC, ("Health Integrity") as the "Zone Program Integrity Contractor" to review VCP. The absence of Health Integrity as a party to this action does not deprive the Court of jurisdiction. As a "fiscal intermediary" that assists CMS in administering Medicare, *see* 42. U.S.C. §§ 1395h & 1395u, Health Integrity serves as an "agent[] of the Secretary charged with the relevant duties under the Medicare Act and its regulations, and, as such, [it] may properly be bound by a writ of mandamus against the Secretary." *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001).

### I. ORIGINS OF VCP'S MANDAMUS ACTION

VCP provides home health services primarily to "homebound" Medicare beneficiaries. In December 2009, Health Integrity requested that VCP provide medical and other information for a random sample of twenty-eight patients as part of an audit ensuring the correctness of Medicare payments made to service providers like VCP. On June 2, 2010, the Secretary suspended Medicare payments to VCP "based on reliable information that an overpayment exists, or fraud or willful misrepresentation exists, or that payments to be made may not be correct." Compl. Ex. F. [1]. Within days of the suspension, VCP filed this action, claiming that the suspension effectively cuts off its funding stream and demanding that the Secretary issue an overpayment determination setting forth the amount, if any, that VCP has impermissibly collected so that it may proceed with an administrative appeal. VCP contends that the Secretary has all the materials necessary to make an overpayment determination, but refuses to do so in a timely fashion. As allowed under the applicable regulations, VCP challenged the suspension in a rebuttal statement on June 17, 2010. *See* Mot. to Dismiss Ex. A. CMS rejected the arguments in VCP's rebuttal and refused to lift the suspension. *See* Mot. to Dismiss Ex. B.

### II. THE COURT HAS MANDAMUS JURISDICTION

The Secretary now moves to dismiss under Rule 12, arguing that the Court lacks subject matter jurisdiction over VCP's claims and that VCP fails to state claims. As mandated by Fifth Circuit caselaw, the Court first addresses the Secretary's contention that it lacks subject matter jurisdiction under Rule 12(b)(1). *See Ramming v. United States*, 281

F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

### A. Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)) "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)), and should "grant[] [the motion] only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders*, 143 F.3d at 1010). In reality, "the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Nowak*, 81 F.3d at 1188. The plaintiff bears the burden of proof in the Rule 12(b)(1) context. *See Ramming*, 281 F.3d at 161.

### B. Neither the APA nor the Federal Question Statute Provide Bases for Jurisdiction

Absent clear statutory language or legislative history to the contrary, courts presumptively have jurisdiction to review administrative actions such as an agency's failure to timely adjudicate a complaint or make certain determinations. *See, e.g.*, *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984).[2] VCP asserts that jurisdiction properly lies in this

---

[2]The relevant "agency action" may include both a "failure to act," 5 U.S.C. § 551(13), or refusal to "perform a duty." 28 U.S.C. § 1361. Although it is well established that the

ORDER – PAGE 3

Court under the Administrative Procedures Act ("APA"), 5 U.S.C. § 500, *et seq.*,³ the general federal question statute, 28 U.S.C. § 1331,⁴ and the federal mandamus provision at 28 U.S.C. § 1361.⁵ In the Medicare context, however, both clear statutory language and caselaw preclude the Court's exercise of jurisdiction under the APA and section 1331.⁶

As in the Social Security context, courts generally lack jurisdiction to review claims brought under the Medicare Act unless plaintiffs first exhaust administrative remedies

---

APA does not provide an independent basis for jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 105 (1977), the APA's command that an agency process matters within a reasonable time, combined with 28 U.S.C. § 1331, creates a presumption of federal question jurisdiction. *See e.g.*, *Yu v. Brown*, 36 F. Supp. 2d 922, 929 (D.N.M. 1999).

³The APA requires an administrative agency to act upon matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). 5 U.S.C. § 701(a)(2) excludes agency actions that are "committed to agency discretion by law" from the APA's reach. But, even when the relevant regulatory framework delegates decisionmaking authority to agencies, they nonetheless still have the duty to act on requests and actually make decisions one way or the other. *See, e.g.*, *Ahmadi v. Chertoff*, 522 F. Supp. 2d 816 (N.D. Tex. 2007) (Godbey, J.) (immigration context).

⁴"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

⁵"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff."

⁶Some courts have construed requests for "duty owed" mandamus relief under 28 U.S.C. § 1361 as largely duplicative of the APA's requirement that agencies act within a reasonable time. *See, e.g.*, *Mt. Emmons Min. Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997) (noting that "[t]he availability of a remedy under the APA technically precludes [the plaintiff's] alternative request for a writ of mandamus"). But, as explained below, although the Supreme Court considers APA actions to "arise under" the Medicare Act – and thus subject to its administrative exhaustion requirement – it explicitly has refused to extend the same treatment to mandamus actions. *See, e.g.*, *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("[a]ssuming without deciding that the third sentence of [42 U.S.C.] § 405(h) does not foreclose mandamus jurisdiction").

through a complex intra-agency appeals process.  In fact, the same judicial review provision applicable to claims brought under the Social Security Act applies to Medicare claims.  *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 8-10 (2000) (citing 42 U.S.C. §§ 405(h) & 1395ii); *see also* 42 U.S.C. § 405(g).  That provision "reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies'" and forecloses the availability of traditional exceptions to those principles such as for hardship or futility.  *Id.* at 12-13 (citing *Heckler v. Ringer*, 466 U.S. 602, 614 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975); *McKart v. United States*, 395 U.S. 185, 193-196 (1969) (exhaustion); *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) (ripeness)).  Indeed, as "the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act" regardless of whether the claims "lend[] [themselves] to a 'substantive' rather than a 'procedural' label," *Ringer*, 466 U.S. at 615,[7] "it demands the 'channeling' of virtually all legal attacks through the agency," even at the "price" of "occasional individual, delay-related hardship."  *Illinois Council*, 529 U.S. at 13.

This includes claims – even those seeking only declaratory or injunctive relief – premised on jurisdiction under section 1331 or the APA.  *Ringer*, 466 U.S. at 615-16.  By its express language, 42 U.S.C. § 405(h) bars claims "brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."[8]  And, because section 405(h)

---

[7]The "arising under" language comes from 42 U.S.C. § 405(h) and the substantive/procedural distinction from *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[8]The Supreme Court has carved out an exception when "application of § 405(h) would not simply channel review through the agency, but would mean no review at all."  *Illinois Council*, 529 U.S. at 19 (citing rule made in *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667 (1986)).  That rule does not apply here.  Once VCP obtains an overpayment

bars even federal question claims "arising under" the Constitution, the Supreme Court has seen no reason to "give greater solicitude" to claims characterized as arising under the APA. *Ringer*, 466 U.S. at 622 (citing *Salfi*, 422 U.S. 749). The Court, therefore, cannot exercise jurisdiction over VCP's claims brought under either section 1331 or the APA. Accordingly, the Court dismisses counts two through seven of VCP's complaint for lack of subject matter jurisdiction.

### C. 42 U.S.C. § 405(h) Does Not Preclude Mandamus Jurisdiction

Although the Supreme Court has had several opportunities to do so,[9] it has never held that the Medicare Act's administrative exhaustion provision precludes a court's exercise of mandamus jurisdiction.[10] The Courts of Appeal, moreover, in "virtual unanimity" have recognized the availability of mandamus jurisdiction in similar actions. *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001) (citing *Burnett v. Bowen*, 830 F.2d 731, 737-38 (7th Cir. 1987); *Ganem v. Heckler*, 746 F.2d 844, 850-52 (D.C. Cir. 1984); *Belles v.*

---

determination – and the Secretary has a nondiscretionary duty make one – it may begin the administrative appeals process.

[9]*See Ringer*, 466 U.S. at 616 (citing *Califano v. Yamasaki*, 442 U.S. 682, 698 (1979); *Norton v. Mathews*, 427 U.S. 524, 528-33 (1976); *Mathews v. Eldridge*, 424 U.S. at 332 n.12); *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 n.3 (1999) ("The Secretary urges us to hold that mandamus is altogether unavailable to review claims arising under the Medicare Act . . . . We have avoided deciding this issue in the past, and we again find it unnecessary to reach it today.") (internal citations omitted).

[10]The *Ringer* Court rejected mandamus jurisdiction in that case. The *Ringer* plaintiffs' claims, however, either directly or "essentially" "request[ed] the payment of benefits," despite their ostensibly procedural nature. 466 U.S. at 620-26.

*Schweiker*, 720 F.2d 509, 511-13 (8th Cir. 1983)).[11]  In light of the general presumption in favor of judicial review of administrative actions and the absence of contrary authority, the Court holds that mandamus may support jurisdiction for an action arising under the Medicare Act, provided that the action satisfy the elements requisite for mandamus to issue and state a claim not disposed of by the procedural and substantive jurisdictional bars already recognized by the statutes and caselaw discussed above.

"The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty."  *Ringer*, 466 U.S. at 616 (citing *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 402-403 (1976); *United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540, 543-544 (1937)).  Although precedent shows that recourse to mandamus has not been cramped "by an unduly narrow and technical understanding of what constitutes a matter of 'jurisdiction,' the fact still remains that 'only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the

---

[11]*See also Bartlett Mem'l Med. Ctr., Inc. v. Thompson*, 347 F.3d 828 (10th Cir. 2003) (citing *Cordoba v. Massanari*, 256 F.3d 1044, 1047 (10th Cir. 2001); *Dockstader v. Miller*, 719 F.2d 327, 329 (10th Cir. 1983)); *Buchanan v. Apfel*, 249 F.3d 485, 491-92 (6th Cir. 2001); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502 (4th Cir. 1999); *Ellis v. Blum*, 643 F.2d 68, 78 (2d Cir. 1981) ("An impressive array of cases in this and other circuits has established that § 1361 jurisdiction will lie to review procedures employed in administering social security benefits" (collecting cases)).

The Fifth Circuit has hinted at mandamus jurisdiction's availability in the Medicare context.  *See Smith v. N. La. Med. Rev. Ass'n*, 735 F.2d 168, 172 (5th Cir. 1984); *Am. Ass'n of Councils of Med. Staffs of Private Hosps., Inc. v. Califano*, 575 F.2d 1367, 1373 (5th Cir. 1978).  The discussion in *Green v. Heckler*, 742 F.2d 237 (5th Cir. 1984), is not to the contrary.  It merely stands for the proposition that mandamus jurisdiction may not support an action challenging "discretionary acts of agency officials."  *Id.* at 241.

invocation of this extraordinary remedy.'" *Kerr*, 426 U.S. at 402 (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)). In the Fifth Circuit, mandamus analysis requires a plaintiff to show that "(1) [he has] a clear right to relief; (2) the defendant [has] a clear duty to act; and (3) there [is] no other available remedy." *Smith v. N. La. Med. Rev. Ass'n*, 735 F.2d 168, 172 (5th Cir. 1984) (citing *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980); *Carter v. Seamans*, 411 F.2d 767, 783 (5th Cir. 1969)).

*1. VCP Has a Clear Right to Relief.* — The Secretary has promulgated the regulatory framework governing the "suspension and recoupment of payment to providers and suppliers and collection and compromise of overpayments" at 42 C.F.R. §§ 405.370-79. The regulations provide for the suspension of Medicare payments "if CMS, the intermediary, or the carrier possesses reliable information that an overpayment or fraud or willful misrepresentation exists or that the payments to be made may not be correct, although additional evidence may be needed for a determination." 42 C.F.R. § 405.371(a)(1). In brief, the regulations allow for an initial 180-day suspension, with or without prior notice, and an opportunity for the provider or supplier to submit a rebuttal statement challenging the bases for suspension. 42 C.F.R. §§ 405.372(a), (b), (d)(1), & 405.374. If a provider or supplier submits a rebuttal, the intermediary must make a written response "contain[ing] specific findings on the conditions upon which the suspension is initiated, continued, or removed and an explanatory statement of the determination." 42 U.S.C. § 405.375. Notably, a provider or supplier may not administratively appeal the decision to continue a suspension after the appropriate authority has rejected a rebuttal. 42 C.F.R. § 405.375(c). In "cases of fraud or misrepresentation" – allegedly at issue here – the initial suspension period may be

extended for an additional 180 days. 42 C.F.R. § 405.372(d)(2). And, in some cases, exceptions exist that allow for even lengthier suspensions. 42 C.F.R. 405.372(d)(3).

The crux of VCP's action concerns 42 C.F.R. § 405.372(c), which details the "subsequent action" required after a suspension's imposition.[12] Section 405.372(c) provides:

> If a suspension of payment is put into effect, the intermediary, carrier, or CMS takes timely action after the suspension to obtain the additional evidence it may need to make a determination as to whether an overpayment exists or the payments may be made. The intermediary, carrier, or CMS makes all reasonable efforts to expedite the determination. As soon as the determination is made, the intermediary or carrier informs the provider or supplier and, if appropriate, the suspension is rescinded or any existing recoupment or offset is adjusted to take into account the determination.

This language clearly indicates that a suspension culminates in a "determination" establishing a provider or supplier's overpayment liability. And, whatever other relief VCP may seek, its mandamus action demands that the Secretary provide an overpayment determination without which VCP may not pursue an administrative appeal. Accordingly, VCP has a clear right to an overpayment determination.

***2. The Secretary Has a Clear, Nondiscretionary Duty to Act.*** — Section 405.372(c) also makes the overpayment determination a nondiscretionary duty. It obligates the

---

[12]The Secretary takes the position that VCP essentially seeks to compel impermissibly a resumption of Medicare payments because the complaint contains claims for, among other things, declaratory and injunctive relief. Mot. at 8. That VCP seeks other relief in the same complaint does not divest the Court of jurisdiction over a well-pled request for mandamus. And, VCP clearly "asks the Court to order [the Secretary] to make an immediate overpayment determination . . . and extend appeal rights required by law so that providers which allegedly are overpaid may dispute and contest liability." Compl. at 1. Because "the modern trend in civil pleading has been to encourage that all claims for relief be brought in a single suit," plaintiffs need not bring mandamus actions separate from other claims. *Rahman*, 198 F.3d at 508 (citing FED. R. CIV. P. 2 & 8(a); 28 U.S.C. § 1361 ("confer[ring] jurisdiction over 'any *action* in the nature of mandamus'") (emphasis in original)).

appropriate authority to "take[] timely action" to acquire evidence and "make[] all reasonable efforts to expedite the determination." 42. U.S.C. § 405.372(c). And, "as soon as the determination is made," the authority must "inform[] the provider or supplier and, if appropriate," "rescind[]" the suspension or "adjust[]" any recoupment or offset against the overpaid amount. *Id.* Accordingly, the ministerial act of determining whether and in what amount an overpayment exists is not one committed to agency discretion; the Secretary must make a timely determination one way or the other.[13]

***3. VCP Lacks Another Available Remedy at Law.*** — The opportunity for rebuttal notwithstanding, nothing in the applicable regulations entitles a plaintiff to administrative review of the decision to impose a suspension. Indeed, the regulations explicitly foreclose the possibility of appeal from an authority's refusal to lift a suspension after rejecting a provider or supplier's rebuttal argument. 42 U.S.C. § 405.375(c). Thus, until the appropriate authority makes an overpayment determination, a plaintiff seeking to establish merely whether and in what amount it has impermissibly received Medicare overpayments has no remedy available at law. This creates some economic hardship, particularly in the case of providers and suppliers that rely on Medicare funding to operate on a day-to-day basis; that hardship, however, does not violate due process and Congress apparently countenanced it. *See Illinois Council*, 529 U.S. at 13; *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir. 1975).

---

[13]The suspension duration limits supply a reasonable time frame in most cases. The Court, however, assumes without deciding that situations exist where the Secretary's refusal to issue an overpayment determination may be unreasonable even within that time frame.

ORDER – PAGE 10

The statute and implementing regulations do not address those potential cases – such as here – where the Secretary allegedly has delayed unreasonably or refused to make a timely overpayment determination. The Secretary appears to argue that the Medicare Act precludes mandamus jurisdiction even then, contending that plaintiffs must first obtain a final agency determination and administratively exhaust before seeking judicial review. *See* Def.'s Reply at 5-6 [13]. The Court disagrees.

This interpretation asks the Court to leave plaintiffs like VCP in an administrative limbo of Kafka-esque circularity. The regulations contain no mechanism through which VCP may appeal the refusal to lift its suspension or demand a timely overpayment determination. Yet, without an overpayment determination, VCP has no claim to present to the Secretary for administrative review. Withheld long enough, the "delay-related hardship[s]" accompanying suspension eventually will exceed those envisioned by Congress. *Illinois Council*, 529 U.S. at 13. But, under the Secretary's approach, plaintiffs nonetheless still would lack appellate recourse. Mandamus exists to address precisely this kind of exceptional circumstance.

Because the Secretary has rejected VCP's request to lift the suspension, it has no other adequate remedy at law. And, VCP claims that the entitled-to overpayment determination has been delayed unreasonably. Accordingly, the Court has mandamus jurisdiction over VCP's claims. Although the one-year suspension time frame allowed in cases of alleged fraud and misrepresentation has not yet expired, that fact more properly relates to whether VCP states a claim for relief.

### III. VCP FAILS TO STATE A CLAIM FOR RELIEF

ORDER – PAGE 11

Having established that the Court has jurisdiction to consider whether the Secretary's delay is unreasonable and to compel performance if it does find unreasonable delay, the Court must consider whether VCP has sufficiently alleged that the delay in making an overpayment determination is unreasonable.

### A. Rule 12(b)(6) Standard

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). In ruling on a Rule 12(b)(6) motion, the court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### B. VCP's Complained-of Delay Is Not Unreasonable Under the Applicable Regulations

VCP fails to state facts showing the Secretary has delayed unreasonably the issuing of an overpayment determination. Although the initial 180-day suspension period has

expired, Health Integrity may have an additional 180 days to complete the review process because the suspension involves alleged "fraud and misrepresentation." 42 C.F.R. § 405.372(d)(2). VCP claims that Health Integrity has long possessed all documents and information necessary to make a determination. Compl. at 11-12. But, Health Integrity based its decision to suspend VCP's Medicare payments on a review of only a "statistically valid random sample" of twenty-eight beneficiaries. Compl. Ex. F. Making an overpayment determination requires Health Integrity to analyze all of VCP's Medicare-beneficiary patients, and VCP primarily serves Medicare recipients. Other than detailing the hardships inherent in suspension, at this juncture VCP states no facts suggesting that the failure to complete the review process and issue an overpayment determination has been unreasonable.

## CONCLUSION

Because the Secretary has not delayed unreasonably VCP's overpayment determination, the Court grants the Secretary's motion to dismiss without prejudice.

Signed February 10, 2011.

_____
David C. Godbey
United States District Judge